## ELIPHALET W. BLATCHFORD

### *v.*

## ISAAC L. MILLIKEN.

1. PROMISSORY NOTES — *indorsements in blank — whether a guaranty or a simple indorsement.* A person who is not a party to a promissory note which is to become a valid obligation against the maker upon its delivery to the payee, by writing his name in blank upon the back of the note, is presumed to assent to the obligation of a guarantor.

2. But where the note creates no valid obligation against the maker, and can create none, until it is indorsed and transferred by the payee, the presumption is, that a person writing his name in blank upon the back of the note assumes the obligation of an indorser.

3. Inasmuch as a note made payable to the order of the maker can never have any validity until the name of the payee appears upon it as an indorser, the person writing his name in blank upon it before it is thus indorsed undertakes that when the note takes effect his name will appear upon it as second indorser.

4. ASSIGNEE — *must take notice of the legal effect of indorsements.* All persons receiving a note thus payable and so indorsed, are apprized of the apparent obligations of the indorsers, and if they rely upon any other obligation, it is their duty to ascertain whether it exists. If an agreement is written over a signature, inconsistent with the intention of the parties as presumed from the nature of the instrument, and an indorsement in blank, it is the duty of persons receiving the note to ascertain how and by what authority it was written there.

5. BLANK INDORSEMENTS — *how they may be filled up.* An authority to fill out an undertaking over a signature is to be exercised consistently with the nature of the instrument and the intentions of the parties.

WRIT OF ERROR to the Superior Court of Chicago.

This was an action of assumpsit, instituted in the court below by Eliphalet W. Blatchford against Isaac L. Milliken, on an alleged guaranty of a note.

Blatchford held chattel mortgage securities for a debt due him from one Hughes. George F. Crocker owed Hughes, and agreed to release these securities in the hands of Blatchford, to accomplish which he induced Blatchford to agree to accept his note, with guaranty by D'Wolf and Milliken, for them. He (Crocker) then made a note, payable to himself in sixty days, and before indorsing it obtained the signatures of D'Wolf and Milliken, in blank on the back. The blanks were filled separately as guaranties, Crocker's name was then indorsed and the note passed over to Blatchford.

The note not being paid at maturity, Blatchford sued Milliken as guarantor; to which he pleaded the general issue.

The note and indorsements thereon were as follows:

$200.                                    CHICAGO, Nov. 26, 1859.

Sixty days after date, for value received, I promise to pay to myself or order the sum of two hundred dollars, with interest after due at 10 per cent.

GEORGE F. CROCKER.

(Indorsed)    GEORGE F. CROCKER.

NOVEMBER 26, 1859.

For value received, I guarantee the payment of the within note at maturity.                        CALVIN D'WOLF.

For value received, I guarantee the payment of the within note at maturity. Nov. 26, 1859.            I. L. MILLIKEN.

A verdict was returned for the defendant. A motion for a new trial was refused and judgment entered on the verdict. The plaintiff thereupon sued out this writ of error.

The question presented under the assignment of errors is, whether the defendant was liable as a guarantor, or only as an indorser.

Mr. H. T. STEELE, for the plaintiff in error, contended that the undertaking of the defendant was that of a guarantor, and in support of that proposition presented the following points and authorities:

A note in this form, so indorsed by the maker, becomes, in the hands of the person receiving it from the maker, in legal effect, a note payable to the *bearer*. By thus placing his name on the back of the note, the maker agrees to pay it to whomsoever may be the holder thereof. Parsons on Notes and Bills, pp. 14, 17; Story on Notes, §§ 16, 36 (*a.*)

And a note in this form is held by this court to be a negotiable promissory note. *Wilder* v. *D' Wolf*, 24 Ill. 190.

Perhaps the legal analysis of the nature and terms of the contract contained in such an anomalous instrument, cannot be more clearly or succinctly given than in the language of PARKE, B., in *Hooper* v. *Williams*, 2 Exch. 13, where such a note was before the court in banc :

"No right to sue could exist in any one, in the case of a note payable to the maker's order, until the order was made in the shape of an indorsement; until that indorsement was made, it was an imperfect instrument, and, in truth, not a promissory note at all, and consequently not transferable under the statute. What, then, is the effect of the indorsement to another person? We think *it was to perfect the incomplete instrument, so that the original writing and indorsement, taken together, became a binding contract,* though an informal one, between the maker and the indorsee; and then, and not till then, it became an assignable note. What, then, is the meaning of the instrument in question? Before the indorsement, it may be considered to be a promise to pay £150, two months after date, to the person to whom the maker should afterwards, by indorsement, order the amount to be paid; such indorsement being intended to have the same operation as if put on a complete note. If, then, the indorsement should be to a particular person, or to A. B., or his order, it would be a note payable to that person, or to A. B., or his order; and if in blank, it would be payable to bearer, in like manner as a sum secured by a complete note would have been, by similar indorsement."

The note in question was not a complete note, until its indorsement by Crocker. It *then* "became a binding contract, though an informal one, between the maker and the indorsee."

Thus, that which was before an "incomplete instrument," became a perfect one; and, upon the delivery of it by Crocker to Blatchford, it for the first time became a valid contract. Until such delivery, the note had no legal inception as evidence of a subsisting debt. *Marvin* v. *McCullum*, 20 Johns. 288.

Now, while this instrument was yet incomplete and in process of completion, the evidence shows that the defendant, Milliken, placed his name upon the note; even before the maker had made the necessary order, by indorsement, preparatory to its delivery. What was the meaning of the defendant's signature upon the note, when he placed it there? It was placed there for some purpose. We contend that it was this: that whenever Crocker should, by his indorsement, order the note paid to the person to whom he should deliver it as evidence of a subsisting debt, he, Milliken, would *see it paid himself*, if the maker did not pay it at maturity. This is a contract of *guaranty*.

The doctrine held by this court, in the case of *notes in regular form*, has been uniform on this subject; that such a party is liable as a *guarantor*. *Camden* v. *McCoy*, 3 Scam. 437; *Cushman* v. *Dement*, id. 497; *Carroll* v. *Weld*, 13 Ill. 682; *Klein* v. *Currier*, 14 id. 237; *Webster* v. *Cobb*, 17 id. 459.

It is claimed that the case before the court comes within the principle involved in the above decisions; and that, in applying that principle to this case, there is no departure from the doctrine laid down in the foregoing adjudged cases. There is no reason, in principle, why a stranger who puts his name on a note made payable to the order of the maker, before its delivery by the maker to his indorser, should not be presumed a guarantor in the same manner as in the case of a note made payable directly to the order of a specific payee.

This doctrine of implied guaranty rests upon the supposed intention of the parties. The presumption is, that the payee of the note gave credit directly to the third party whose name was on the note when it was first delivered by the maker, and that such third party intends to incur the liability of an original promisor. Such is the legal presumption in the case of a

note in the ordinary form. Now, it cannot be said that the circumstance of the note being drawn in form payable to the order of the maker, so far destroys this legal presumption that the holder shall not be permitted to say and prove that such a note was guaranteed. The most that can be said against it in such a case is, that the greater number of names on such a note may occasion a *doubt* as to the object of placing any particular name on it, and so weaken the presumption. But any degree of doubt in the case could not extinguish the legal presumption, provided the proof dispelled the doubt. And the doubt is certainly no greater in such a case than when a guaranteed note of regular form has been in circulation, and for the purposes of transfer has received several indorsements. And yet, in such a case, the court permitted evidence to show the true character in which a particular name had been placed on a note before its indorsement and transfer by the payee; and under the evidence found a guaranty, and applied the doctrine of implied guaranty to an *assigned* note, even to the extent of holding such a contract of guaranty *negotiable*. *Webster* v. *Cobb*, 17 Ill. 459.

Proof has always been held admissible, in this State, in such cases, to show the true nature of the contract; and upon the bare showing that a party not a maker had placed his name upon a note *prior to its delivery*, he has been held a guarantor; unless such party established by proof a different contract between the parties. Such proof is received, not to control the contract, but to establish it according to the manifest *intention of the parties*, in conformity with the familiar rule, that the law does not imply a contract where an express one has been made. *Perkins* v. *Catlin*, 11 Conn. 213.

In the case of *Lewis* v. *Harvey*, 18 Mo. 74, GAMBLE, J., in delivering the opinion of the court, said:

"We think the strength of argument is decidedly opposed "to the conclusion that the party who puts his name upon the "back of a note to which he is not a party, *whether it be* "*negotiable or not*, is to be held only as indorser. We think "that he is to be taken to have assumed the obligation arising

" from the act of putting his name upon paper *as it then was*, " and upon which he could not then be an indorser."

This reasoning applies as well to the case of a note made payable to the order of the maker as to one drawn in the ordinary form.

Mr. A. GARRISON, for the defendant in error.

Where a person signs his name in blank on the back of a note, a holder may fill up the indorsement by a writing which shall be consistent with the nature of the instrument, and the intention of the parties. But the defendant did not intend to incur the liability of a guarantor, but only that of an indorser. 3 Scam. 437, 441, 497, 499; 21 Ill. 636; 13 id. 682; 14 id. 240; 17 id. 465; 25 id. 91.

Mr. JUSTICE BECKWITH delivered the opinion of the Court:

It is the settled law of this State, that a person who is not a party to a promissory note which is to become a valid obligation against the maker upon its delivery to the payee, by writing his name in blank upon the back of the note, is presumed to assent to the obligation of a guarantor. 3 Scam. 437; 3 id. 497; 13 Ill. 682; 14 id. 240; 17 id. 465; 21 id. 636; 25 id. 91. But where the note creates no valid obligation against the maker, and can create none, until it is indorsed and transferred by the payee, the presumption is that a person writing his name in blank upon the back of the note assumes the obligation of an indorser. Inasmuch as the note can never have any validity until the name of the payee appears upon it as an indorser, the person writing his name in blank upon the note understands that, when the note takes effect, his name will appear upon it as a second indorser, and it is reasonable to conclude that such was the position which he intended to occupy. *Bogue* v. *Mellick*, 25 Ill. 91; *Bigelow* v. *Colton*, 13 Gray (Mass.), 309; *Lake* v. *Stetson*, 13 id. 310; *Capp* v. *Rice*, 13 Gray, 403, 405, *n.* All persons receiving a note thus payable and so indorsed are apprised of the apparent obligations of the

indorsers, and if they rely upon any other obligation, it is their duty to ascertain whether it exists. Any other obligation is *dehors* the instrument. An authority to fill out an undertaking over a signature is to be exercised consistently with the nature of the instrument and the intention of the parties. From the nature of a note payable to the maker's own order, it is known what the law will presume was the intention of the parties in indorsing it in blank; and if any agreement is written over the signature inconsistent with such presumption, it is the duty of persons receiving the note to ascertain how and by what authority it was written there.

*Judgment affirmed.*