F. WILLIAM QUACKENBOSS, Administrator With Will Annexed of Estate of ANDREW DOERR, v. SIMON J. HARBAUGH, Executor of Estate of DETLEF VON DER LIPPE, Appellant.

Division One, April 6, 1923.

1. **PRACTICE: Filing of Reply: On Day of Trial.** Permission to plaintiff to file a reply to defendant's counterclaim, on the day of the trial, where notice of the character of the reply has been served on defendant's counsel on the previous day, is a matter largely within the discretion of the trial court, and will not be held to be erroneous unless the record shows an abuse of the discretion.

2. ————: **Action on Note: Allegation of Contract of Suretyship: Statute of Frauds: General Objection.** Failure of the petition to expressly allege that the alleged contract of suretyship sued on was not in writing cannot be raised by demurrer; and for a stronger reason, a general objection to the introduction of any and all evidence on the ground that the petition is insufficient in that it does not allege that the alleged contract of suretyship was not in writing, does not raise the defense of the Statute of Frauds.

3. **PROMISSORY NOTE: Sureties and Co-Makers: Contract of Co-Suretyship: Statute of Frauds.** Stockholders of a corporation, for which it was necessary to raise money, signed the company's notes as co-makers or placed their names on the back thereof, and in this suit by the administrator of one of them, who paid a number of said notes, to compel contribution from another, it is alleged that it was agreed among themselves that their relationship to each other should be that of co-sureties and their liabilities *inter sese* those fixed by that relation. *Held,* that the Statute of Frauds (Sec. 2169, R. S. 1919) does not apply to a contract of co-suretyship, and it was not necessary to prove that it was in writing, but it could be proved by parol. Being individually liable to the payee, their collateral parol agreement establishing their relationship to each other was not a promise to answer for the debt, default or miscarriage of another person. [Overruling Bissig v. Britton, 59 Mo. 204, in so far as it ruled that one liable upon a note or contract may not orally bind himself to hold harmless another who becomes a surety in consideration of such agreement.]

4. ———: ———: ———: **Liability Under Recent Statute.** Section 849, Revised Statutes 1919, declaring that "a person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity," concerns the relation of the indorser to the payee of the note, and does not exclude parol proof of the true relation of the indorsers to each other.

5. ———: ———: ———: **Liability in Order of Indorsement.** Where notes were signed by stockholders, either as indorsers or comakers, to raise money for the corporation, and the signatures appear in every order on the notes and were placed there as the secretary casually came in contact with the stockholders, and by parol agreement they agreed that their relation to each other should be that of co-sureties, they are not liable, in a suit for contribution, in the order in which they indorsed, and the words of Section 854, Revised Statutes 1919, that "as respects one another, indorsers are liable prima-facie in the order in which they indorse" have no application, but parol evidence is admissible to show that as between or among themselves they have agreed to be otherwise liable.

6. ———: ———: ———: **Contracts Made in Another State: Contribution: Common Law.** A parol agreement among indorsers of notes that they shall be liable as co-sureties being valid at common law, a suit by the one who paid them to compel contribution from another is not to fail because the notes were Illinois contracts and no law of that state authorizing a recovery is proved.

7. ———: **Contribution: Bankrupt Principal: Presentation.** Where notes were signed by stockholders to raise money for a corporation (the maker), and one of them paid the notes after maturity and sues another for contribution, a failure to present the notes for allowance against the bankrupt estate of the corporation is no defense.

8. ———: **Renewal: Discharge of Indorser.** A renewal note does not discharge a co-surety's obligation to pay.

9. ———: ———: **Co-Sureties: Payment by One Without Protest or Waiver.** Where plaintiff is the payee or holder of the notes, and sues on a contract to which all other signers of the notes were parties and which made them co-sureties without regard to the formal relation they bore to the notes, and the plaintiff's loss on the notes arose from the failure of the maker to pay him or his transferree, his right to enforce contribution from other co-sureties is not dependent upon protest or waiver of protest.

298 Mo.—16

10. ———: ———: Contract of Co-Suretyship: Decedent Co-Surety: Witness: Party to Contract. In a suit to compel contribution based on a contract by which the signers of notes agreed among themselves that they would be liable as co-sureties, and brought by the administrator of one of them, who paid the notes, against the executor of another, two other signers of the notes and parties to the contract of co-suretyship are competent to testify to the signature of defendant's decedent to the notes; and if it be conceded that the promise of each party to the agreement is the joint promise of the others, then said two signers, as joint promisors with said decedent, are competent.

11. ———: ———: Counterclaim: Guaranty Bond: Unpaid Claim. In a suit to compel contribution from other co-sureties on notes paid, a counterclaim that plaintiff and defendant's testator, and others who did not sign the notes and who are not shown to be insolvent, signed a guaranty to establish the credit of a corporation, and that credit thereon was extended and the claim proved against decedent's estate, cannot be allowed, where the claim has not been paid, and defendant's sole contention is that plaintiff is liable upon a contract to idemnify decedent against loss by reason of his signing the guaranty, and there is no evidence tending to prove the making by plaintiff of a specific contract to idemnify decedent.

Appeal from St. Louis City Circuit Court.—*Hon. Vital W. Garesche,* Judge.

AFFIRMED.

*Dawson & Garvin* for appellant.

(1) Plaintiff's failure to make timely reply to defendant's affirmative defenses and counterclaims entitled defendant to judgment *pro confesso* and inquiry. R. S. 1909, sec. 1809; Eunis v. Hogan, 47 Mo. 513; Bird v. Rowell, 180 Mo. App. 421. (2) In case No. 92336 the amended petition is insufficient to admit evidence. (a) Lacking averments or proof respecting law of Illinois where notes were signed and made payable. Davis v. McColl, 166 S. W. 1113, 184 S. W. 920. (b) Petition shows notes were signed for accommodation of Joan D'Arc Manufacturing & Supply Co. and fails to allege or

prove any presentment at maturity to or demand for payment of said company or protest for non-payment. Eaves v. Keeton, 196 Mo. App. 424; Bennett v. Kestler, 163 N. Y. Supp. 555. (c) No facts stated showing liability of accommodation parties to each other on notes. Shea v. Vahey, 215 Mass. 80; McNeilly v. Patchin, 23 Mo. 40; Dunn v. Wade, 23 Mo. 207; McCune v. Belt, 45 Mo. 174; Stillwell v. How, 46 Mo. 589; Hildegast v. Stephensen, 75 Mo. 118; In re McCord, 174 Fed. 72; R. S. 1909, secs. 10000, 10161, 10089; Williams v. Gerber, 75 Mo, App. 18; Burrus v. Cook, 215 Mo. 496, 501. (3) In the other six cases the amended petitions are insufficient to admit evidence. (a) It appears that the alleged signature of defendant's testator is in blank on the backs of the notes sued on, and parol evidence that he signed as co-surety with and was therefore liable for contribution to plaintiff's testator is not admissible. R. S. 1909, sec. 10033; Overland Auto Co. v. Winters, 180 S. W. 561, 210 S. W. 1; In re McCord, 174 Fed. 72; Eaves v. Keeton, 196 Mo. App. 428; Johnson v. Ramsey, 43 N. J. L. 279, 285. (b) No other agreement than that the alleged endorsers agreed to became co-sureties is alleged. (4) In three of these six cases no protest or waiver of protest is alleged or proved. This also is essential in any such case. McDonald v. Luckenbach, 170 Fed. 434; Eaves v. Keeton, 196 Mo. App. 424; Bennett v. Kestler, 163 N. Y. Supp. 555; Overland Auto Co. v. Winters, 210 S. W. 1. The court erred in refusing defendant's request to so declare the law. (5) Appellant's demurrers to the evidence at close of plaintiff's case and of the whole case should have been sustained. (a) Alleged accommodation indorsers in blank of negotiable promissory notes executed, if at all, in Missouri after the passage of the Negotiable Instruments Act, are sued on said notes as co-sureties for contribution by another alleged accommodation indorser in blank, and no competent, relevant or material evidence tending to show such liability was offered. Secs. 63, 10033, R. S. 1909; Walker v. Dunham, 135 Mo. App. 396; Overland Auto Co. v. Winters, 277 Mo. 425;

Johnson v. Ramsey, 43 N. J. L. 279; In re McCord, 174 Fed. 72; Shea v. Vahey, 215 Mass. 80; Eaves v. Keeton, 196 Mo. App. 424; Porter v. Huie, 126 S. W. 1069. (b) Case No. 92336 is an Illinois note, and no Illinois law was offered in evidence. Davis v. McColl, 166 S. W. 1113; Same case, 184 S. W. 920. (c) All signers signed for the accommodation of the' Joan D'Arc Manufacturing & Supply Co. No evidence was offered tending to show any agreement between accommodation parties to be jointly liable or liable for contribution. The rule of law is that liability among accommodation parties to negotiable notes is successive and several and not joint. Druhe v. Christy, 10 Mo. App. 566; McNeilly v. Patchin, 23 Mo. 40; Dunn v. Wade, 23 Mo. 207; McEntire v. Doyle, 15 Mo. App. 583; McCune v. Belt, 45 Mo. 174; Stillwell v. How, 46 Mo. 589; Hildegart v. Stephensen, 75 Mo. 118. (d) The Negotiable Instrument Act makes accommodation makers primarily liable and absolutely required to pay; that all other parties are only secondarily liable; that a negotiable instrument is discharged by payment by or on behalf of a principal debtor. R. S. 1909, secs. 10038, 10033, 10000, 10089.

*Rassieur, Kammerer & Rassieur* for respondent.

(1) Under the Negotiable Instrument Act, evidence is admissible to show that each indorser has agreed to be liable for the principal debt alone, and therefore that all indorsers are co-sureties with each other and liable to contribution. As respects one another, indorsers are liable prima-facie in the order in which they indorse, but evidence is admissible to show that as between or among themselves they have agreed otherwise, and it is not necessary that there shall be proof of an actual formal contract. Trego v. Estate of Cunningham, 267 Ill. 368; Morgan v. Thompson, 72 N. J. L. 244; Wilson v. Hendee, 74 N. J. L. 640; George v. Bacon, 123 N. Y. Supp. 103; Harris v. Jones, 136 N. W. 1080; In re McCord, 174 Fed. 72; 1 Daniel Neg. Inst. (6 Ed.) sec. 704, p. 788. (2) The

parties to the paper sued on were stockholders of the
Joan D'Arc Manufacturing Company, and they there-
fore occupied the dual position of "accommodation par-
ties" and the "accommodated parties." The notes were
made to raise money for the corporation whose assets
and property belonged to them, and as the "accommo-
dated parties" they were not entitled to notice. Trego v.
Estate of Cunningham, 267 Ill. 368; Secs. 10050, 10085, R.
S. 1909; Mercantile Trust Co. v. Donk, 178 S. W. 116.
(3)   In an action on a contract made in Illinois and
subject to its laws, the laws of the State of Illinois must
be pleaded and proved, and in the absence thereof, the
action will be determined according to the common law.
The court takes judicial notice that the common law pre-
vailed in Illinois, but not of the existence of its statutes,
and in the absence of proof, its statutes will not be con-
sidered.   Morton v. Supreme Council of Royal League,
100 Mo. App. 88; Stakebake v. Union Pac. Railroad, 185
S. W. 1166.   (4)  The doctrine of contribution is the re-
sult of general equity, based on the ground of equality
of burden and benefit, is equally applicable between prin-
cipals as between sureties, and has been adopted as a rule
of common law in this State.   Van Petten v. Richardson,
68 Mo. 379; Jeffries v. Ferguson, 87 Mo. 244; Leeper v.
Paschal, 70 Mo. 124; Dysart v. Crow, 170 Mo. 275; Gregg
v. Carroll, 201 Mo. App. 476; Skrainka v. Rohan, 18 Mo.
App. 340.   (5)   One accommodation indorser who has
discharged the common liability can recover from each
of his co-accommodation indorsers his share of the obli-
gation, but in determining the proportion which each
indorser should contribute, regard will be had to only
the solvent indorsers and to those within the jurisdic-
tion of the court called upon to enforce contribution.
Van Petten v. Richardson, 68 Mo. 379; Dodd v. Winn, 27
Mo. 501.   (6)   The right to compel contribution from
the estate of a deceased indorser on the note of a corpo-
ration is not affected by the fact that the other indorsers
executed notes as principal makers, with which they took
up the notes of the corporation upon which all of the

parties were indorsers, which new notes were subsequently paid by the surviving solvent indorsers. Trego v. Estate of Cunningham, 267 Ill. 368. (7) An "accommodation party," defined by Sec. 10,000, R. S. 1909, as one who has signed the instrument as a maker, drawer, acceptor, or indorser, without receiving value therefor and for the purpose of lending his name to some other person, and who by that action is made liable to a holder for value, notwithstanding the holder, at the time of taking the instrument, knew he was only an accommodation party, is primarily liable to the holder, under Sec. 10,161, which provides that a person primarily liable on an instrument is one who, by the terms thereof, is absolutely required to pay the same. Night & Day Bank v. Rosenbaum, 191 Mo. App. 559; Bank of Senath v. Douglass, 178 Mo. App. 664; Vanderford v. Farmers' Bank, 105 Mo. App. 164; Union Trust Co. v. McGinty, 98 N. E. (Mass.) 679; Wolstenholme v. Smith, 34 Utah, 300; Lane v. Hyder, 163 Mo. App. 688; Golden City Banking Co. v. Morrow, 184 Mo. App. 515. (8) Each accommodation indorser contracted with all other accommodation indorsers, jointly and severally, and when one indorser died, each other indorser, whether a party defendant or not, was a competent witness to testify as to the agreement existing between the indorsers, in a suit for contribution at the instance of one indorser who was compelled to pay the obligation. The indorser who paid was thereafter the opposite party to the contract, and the death of one joint contractor did not disqualify the deceased's co-contractors from testifying. Citizens Ins. Co. v. Broyles, 78 Mo. App. 364; Hill-Dodge Banking Co. v. Loomis, 104 Mo. App. 62; Vandergriff v. Swinney, 158 Mo. 527; Short v. Thomas, 178 Mo. App. 400; 4 Jones on Evidence, p. 633, sec. 773. (9) Sec. 191, R. S. 1909, requires all demands against estates to be exhibited within one year from the publication of the notice to creditors, but a claim barred by the statute and not presented for allowance within the time limited above, may, nevertheless be used as a set-off in the defense of a claim against

the estate.  Stiles v. Smith, 55 Mo. 363; Green v. Conrad, 114 Mo. 651.

JAMES T. BLAIR, J.—Quackenboss is the administrator, c. t. a., of the estate of Andrew Doerr, and brought seven separate suits against Harbaugh, executor of the estate of Detlef Von der Lippe, to enforce contribution on payments made by his decedent on seven notes of the Joan D'Arc Mfg. & Supply Co., on which the names of both Doerr and Von der Lippe appear as co-makers or as indorsers or in which Doerr was the payee and Von der Lippe's signature appears.

No. 22761 is based on a note of the Joan D'Arc Mfg. & Supply Co., payable to the Ricker National Bank, dated January 27, 1913, for the sum of $2575.56, with six per cent interest.  The names of Doerr and Von der Lippe and those of Crossmeyer, Bauer, Hadeski and Ashloff appear on this note, in blank, as indorsers.  The note came due and was duly presented and protested.  The evidence shows it was paid by Doerr, and no evidence to the contrary was offered.  Judgment for $1493.67 was rendered against appellant.

No. 22762 is founded on a note (dated November 1, 1912) of the same amount, same payee and principal, and indorsed by the same persons and, also, by Joseph Kreis and George Mclsheimer, and duly protested.  Judgment was rendered on this note, which had been paid by Doerr, for $1545.21.

In No. 22763 the note was for $2500, was dated 10-31-1911, and was payable to Bauer.  Demand, protest and notice of dishonor were waived.  All the names except that of Ashloff which appear on the two notes already described, and, in addition, the names of Boehme and Seiter, appear on this note as indorsers in blank.  This note was paid by Doerr.  Judgment was rendered in this case for $1618.60.

In No. 22764 the note was signed by the same company, was payable to the order of Kadeski, and was for the sum of $5,000.  On this note all the names which ap-

pear on the first two notes described above appear as indorsers in blank, and, also, the name of Johnson. After maturity payment was made by Doerr. Judgment went for $2882.43.

In No. 22765 three notes for $1,000 each and one for $1500 are sued on. In each of these Zeman is payee and, besides the company, all are signed by Doerr and Von der Lippe and all those (except Ashloff and Thompson) on notes above described. These all signed as co-makers. Doerr paid them all. Judgment went in this case for $2331.26.

In No. 22766 the note sued on is for $2525. It is signed by the Joan D'Arc Mfg. & Supply Co., and the American Packless Valve Co., is payable to Doerr and indorsed by Van der Lippe and several of the others who indorsed previously mentioned notes. The evidence tends to show that this note was negotiated by Doerr for the accommodation makers and paid by him at maturity. Judgment went in this case for $2903.68.

In No. 22767 the note sued on is for $5,000, signed by the same companies as in No. 22766, payable to Doerr and indorsed by him and Von der Lippe and nine others of those whose names have appeared as indorsers or co-makers in the other case. The judgment in this case was for $2882.51.

In each of these cases there are allegations, appropriate to the particular case, to the effect, in substance, that the co-indorsers and co-makers, as the case may be, intended to be and were, as among themselves, bound as co-sureties. In each case it is alleged that the Joan D'Arc Company went into bankruptcy, and the note sued on was proved up in that proceeding and an allowance secured on which payment was received of about ten and one-half per cent. Credit is given in each case for this amount.

The insolvency of the two companies and the insolvency or non-residence of the indorsers and co-makers, except Doerr and Von der Lippe, is alleged, as to those involved, in each case.

The answer in each case admits defendant is the duly qualified and acting executor of the estate of Von der Lippe, and denies all other allegations. In addition "as an affirmative defense and by way of set-off and counterclaim," appellant pleads a contract of guaranty and a note and facts relevant thereto, and alleges the liability of Doerr to Von der Lippe thereon to the extent of $15,261.97, for which he asks judgment. This is set up in each of the seven cases. The specific allegations in this part of the pleading will be stated later, so far as is necessary. The reply is a general denial.

The evidence was taken as if but one case was on trial, and the record is the same in all. Some of the evidence applies to all the cases. Some of it applies to one or more, but not to all. The files of the probate court in the estates of Doerr, Von der Lippe and Melsheimer, and the files in the bankruptcy proceedings against the Joan D'Arc Mfg. & Supply Company, and the several notes in suit, were put in evidence. Certain of the assignments of error pertain to all the cases, and others have to do with particular cases or groups of cases.

I. The answer and counterclaim were on file a year before the trial, and respondent did not file replies until that time. When the trial began and the petition and answer had been read, respondent's counsel stated that the reply was a general denial. Notice of this had **Filing Reply.** been served on appellant's counsel the previous day. He objected to the filing of the replies, and moved for judgment because of the delay in filing them. The motion was overruled, and this ruling is assigned for error in each case. This was a matter largely within the discretion of the trial court, and the record does not show an abuse of it. [Hale v. Skinner, 33 Mo. l. c. 453, 454; Blondeau v. Sheridan, 81 Mo. l. c. 550, 551.]

II. At the beginning of the trial appellant objected to the introduction of any evidence on the ground that the petitions failed to state a cause of action in that it

was not alleged that "the contract of suretyship was in
writing, and it does not appear on the face of
the petition or the notes that they are or were
anything other than a contract of indorse-
ment." At the time counsel based his objection on the
Statute of Frauds (Sec. 2169, R. S. 1919) and Section
849, Revised Statutes 1919. The objection is so framed
as to concede, for its purpose at least, that the petitions
did allege a contract of co-suretyship and seemed to pro-
ceed upon the theory that the fact that Von der Lippe's
name appeared on certain of the notes as indorser or
co-maker was conclusive upon the relationship of the
parties in all respects, even as among themselves.

> **Unwritten Contract.**

1. In so far as this objection is based upon the fail-
ure of the petitions expressly to allege that the contract
of co-suretyship was in writing, it is answered by the rule
that such a question cannot be raised by demurrer (Phil-
lips v. Hardenburg, 181 Mo. 463), and, for a stronger rea-
son, cannot be raised by the less effective sub-
stitute therefor which appellant attempted to
employ. The objection was not one to parol
evidence of a denied contract required by the Statute of
Frauds to be in writing. It was an objection to any and
all evidence on the ground that the petition was insuffi-
cient in the respect mentioned. The trial court was right
in overruling the objection.

> **General Objection.**

2. Since the Statute of Frauds was later invoked as
against parol evidence to prove the contract of co-surety-
ship, the question may be considered in this same connec-
tion.

The decedents, whose estates are represented in this
case, and the others were stockholders in a corporation
for which it was necessary to raise money. Its financial
condition was not good. It is clear the plan was, in most
instances, for the stockholders or, at least, a number
of them, to sign the corporation's notes as
co-makers or to place their names on the
back of the notes. This was done. Appel-

> **Contract of Co-Suretyship.**

lant insists that any agreement among these signers or indorsers, even in advance of signing, that, without regard to the manner in which their names appeared on the notes, their relationship to each other should be that of co-sureties and their liabilities *inter sese* those fixed by that relation, is within the Statute of Frauds and must be proved by writing. The language of the section relied upon is: ''No action shall be brought . . . to charge any person upon any special promise to answer for the debt, default or miscarriage of another person . . . unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed,'' etc. The nature of the obligations of the indorsers and co-makers in question to the payee was not affected by the agreement except as the payee was a party to the contract of co-suretyship. Each was to be and was bound to him according to his contracts as expressed on the notes he signed. They were to become and became his debt, according to the notes, so far as the payee was concerned. The agreement made was that each would respond as a co-surety to the others and that each should be liable to the others according to the law of co-suretyship. Under neither relation would any of them pay if the principal discharged the debt. Under either relation they could become liable to the payee if the principal did not pay. Under the great weight of authority the agreement is not within the statute. In Weeks v. Parsons, 176 Mass. 570, directors of a corporation had an understanding that they should indorse notes for the benefit of the corporation and that their relations as among themselves should be those of co-sureties. The court held (l. c. 576) that the Statute of Frauds did not apply ''because the parol agreement related to the obligations of the indorsers *inter sese,* and not to a promise to pay the debt of another; also, so far as there was any promise it was one implied by law . . . from the mutual relation of the parties when it was established that they were co-sureties.'' A like agreement between two indorsers upon a note given to

raise money for an adventure of their sons in business was held "not a promise to answer for the debt, default or misdoing of another." [Faulkner v. Thomas, 48 W. Va. l. c. 153, 154.] In Sanders v. Gillespie, 59 N. Y. 250, a like principle was applied. Other decisions enforcing similar oral agreements between indorsers are: Sloan v. Gibbes, 56 S. C. l. c. 486; Alphin v. Lowman, 115 Va. l. c. 445, et seq.; Westfall v. Parsons, 16 Barb. 645. In Cortelyou v. Hoagland, 40 N. J. Eq. l. c. 2, eight directors of a corporation indorsed a note for its benefit under an oral agreement to protect each other from all loss except one-eighth agreed to be paid by each. It was held the agreement was not within the Statute of Frauds. The Supreme Court of Washington in Handsaker v. Pedersen, 71 Wash. l. c. 224, had occasion to apply the rule to an accommodation indorser who relied upon a parol agreement to establish a different relation with others on the note. It was held that the agreement was not within the statute. So far as co-makers are concerned the rule permitting their true relation as sureties to be shown by parol is too familiar a rule to require discussion, unless, as seems to be contended, a recent statute has affected it in some way.

In this State, in Garner v. Hudgins, 46 Mo. l. c. 401, it was held that a member of a firm who induced another to sign as surety a note given to raise money for the firm, and which was admitted to be the firm's debt, by promising to indemnify such surety against liability, was liable upon the agreement though it was not in writing. This involves a principle which, on one view, has application here. The court, through BLISS, J., said: "It has been sometimes held that a promise to indemnify did not come within the statute, but it seems to be now settled by the better authorities that where the promise is collateral merely, the promisor having no interest in the liability guaranteed against, and being under no obligations to pay it, it is not obligatory unless in writing. [Brown on Statute of Frauds, secs. 168, 171, and cases cited; now Sec. 161 et seq., 5th Ed.] But the promise

to indemnify is only embraced by the statute when it is to pay the debt of another, and hence an indemnity against one's own obligation or liability does not come within it.''

In Bissig v. Britton, 59 Mo. 204, Britton, who had already signed as surety a replevin bond for Wisner and others in an action about to be commenced, induced Bissig to sign the bond as surety by promising orally to hold him harmless and pay it if liability accrued on account of the suretyships. It turned out that Bissig was forced to pay and he sued Britton on the oral promise. This court applied the rule generally held applicable to such a contract of indemnity when made by a stranger to the debt and ignored the fact that Britton was also bound for the bond. It was held the agreement was within the statute. The court held that Thomas v. Cook, 8 Barn. & C. 728, had been overruled by Green v. Cresswell, 10 Ad. & El. 453, and found its decision on this, as the law of England, and certain decisions of the state courts. Green v. Cresswell has long ceased to be the law in so far as any application it could have to support the holding in Bissig v. Britton (Browne on Statute of Frauds (5 Ed.) sec. 161b; Stearns on Suretyship, secs. 32, 33), and the cases in this country in the main now deny its doctrine to that extent, as appears from the same texts. It is not necessary to go further in this case than to say that Bissig v. Britton ought not any longer be followed as authority for the proposition that one liable upon a note or contract may not orally bind himself to hold harmless another who becomes a surety in consideration of such an agreement. See cases cited: In 27 C. J. (Frauds, Statute of) sec. 40, p. 155 et seq.; in note to Posten v. Clem, 1 A. L. R. p. 383 et seq.; in 25 R. C. L. p. 529, sec. 115. A discussion of Bissig v. Britton is found in Reed on Statute of Frauds, in note to Section 144. The decision in Bissig v. Britton is founded largely upon Green v. Cresswell, in which the indemnitor was a stranger to the principal obligation. In the case before the court the contrary was true. No heed was

paid to this distinction which is one taken in the cases and text-works. The court laid hold upon a valid principle and applied it to facts which were not within it. The case of Hurt v. Ford, 142 Mo. l. c. 301, adds nothing to Bissig v. Britton and involves facts which take it out of any part of the rule of that case which could apply here. There the promise to indemnify was made by the payee to indemnify Ford against liability as surety on the note which he signed as surety for Hightower. In Gansey v. Orr, 173 Mo. l. c. 546, the promise was one made to plaintiff to "indemnify her against the miscarriage of the business enterprise thereafter to be entered into by the William A. Orr Shoe Company." In that case the promise was to repay the price of stock if the corporation's venture failed. The decision in Bissig v. Britton, to the extent indicated, should be no longer followed. The true rule, so far as the instant case is concerned, is stated in Garner v. Hudgins, supra.

III. The position that Section 849, Revised Statutes 1919, excludes proof of the true relation among indorsers is not tenable. That section is: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity." This section and the decisions cited (Overland Auto Co. v. Winters, 180 S. W. 561, 210 S. W. 1; Stephens v. Bowles, 206 S. W. 589) concern the relation of the indorser to the payee of the note. Section 854, Revised Statutes 1919, deals with the relations of indorsers *inter sese*. It provides: "As respects one another, indorsers are liable prima-facie in the order in which they indorse; but evidence is admissible to show that as between or among themselves they have agreed otherwise."

*Recent Statute.*

IV. There was sufficient evidence tending to prove the agreement among the indorsers that they would

Quackenboss v. Harbaugh.

In Order of Indorsement. stand with respect to each other in the relationship of co-sureties. Respondent quotes from Trego v. Estate of Cunningham, 267 Ill. l. c. 377, 378, paragraphs pertinent to that question as follows:

"A claim much insisted upon in argument is based on Section 68 of the Negotiable Instruments Law (Laws 1907, p. 402), which provides that, as respects one another, indorsers are liable prima-facie in the order in which they indorsed, but evidence is admissible to show that as between or among themselves they have agreed otherwise. There was no regular order in which the indorsers signed the different notes, but in all of them Cunningham's name appeared below that of one of the beneficiaries. As applied to notes like those in question here, payable to the order of the maker, the law of this State was the same before the Negotiable Instruments Act was passed. Where a note was payable to the order of the maker and created no obligation until indorsed by him, the person writing his name on it in blank undertook the obligation of a second indorser. [Blatchford v. Milliken, 35 Ill. 434.] The rule was otherwise as to a note payable to another party, and the Negotiable Instruments Act extended the same rule to all notes in accordance with the prevailing doctrine. [3 R. C. L. sec. 348.] That act contemplates proof of an understanding between indorsers that their liability shall be joint, and not as implied from the order in which their names appear. Both by the terms of the act and the settled law the rule excluding parol evidence to vary a writing has no application. Where one not the payee placed his name on the back of a note parol evidence was always admissible to show what liability was in fact assumed. [Kingsland v. Koeppe, 137 Ill. 344.] In case of an indorsement in blank the established rule has been that resort might be had to parol evidence and the circumstances of the case to prove the true relation. [Cook v. Brown, 62 Mich. 473.] Of course, it is not essential that a verbal agreement that the indorsers should be equally

liable should be proved, but an inference of such an agreement may be otherwise established. The understanding of the parties in that regard may be proved like any other fact, by the circumstances surrounding them. In this case the indorsers constituted the entire body of stockholders of the corporation, of which they were also directors, and to keep the corporation running it was necessary for them to indorse notes. It would be quite unreasonable to say that there was any intention that their liability should be determined by the order in which they indorsed the notes or that they expected to sue each other in that order. The notes were made for their benefit equally, to raise money for the corporation, whose assets and property belonged to them.''

The same facts appear in this case and, further, there is testimony of conversations or declarations among the indorsers and in Von der Lippe's presence which have a tendency to support the inference of an agreement such as is alleged. The signatures appear in any and every order upon the notes. The method of signing was for the secretary or some official to present the note or notes to the several stockholders in the order in which he casually came in contact with them, and they signed or indorsed in the order thus accidentally determined. The order of signing or indorsing is not the same on any two of the notes. In Weeks v. Parsons, 176 Mass. l. c. 575, the court had before it a case similar in many of its facts. It was held: ''The court found that there was an understanding between the directors that they should indorse the notes for the benefit of the corporation, and that it was intended and understood that the indorsements were to be joint and not several.' There was evidence warranting this finding, and it follows from it that the indorsers were as between themselves co-sureties. It was not necessary that there should be a contract in so many words to sign as co-sureties. It was sufficient if it appeared, taking all the circumstances into account, that that was the nature of the liability which as between

themselves the parties intended to assume and did assume.''

V.   In one case it is argued that the notes sued on are Illinois contracts and the judgment must be reversed because no law of Illinois was proved authorizing a recovery.   Davis v. McColl, 166 S. W. 1113, is cited.   That case refers to cases and acts of Congress which make it clear that the common law prevailed in Illinois prior to its admission to the Union, and holds that in such circumstances further proof of the law of the State is unnecessary (unless it is desired to invoke some subsequent modification of that law).   There is no reason for a further discusison of the phases of the case to which this objection applies since the common law relating thereto has already been considered.

*Proof of Illinois Law.*

VI.   All notes, or claims arising out of their payment, save one, were presented against the bankrupt estate of Joan D'Arc Mfg. & Supply Company, and the allowance made is credited.   As to the excepted claim, it seems to be argued that the failure to present it in the bankruptcy case in some way defeats the action upon it.   The right of Doerr against his co-sureties arose against them upon payment of the notes by him and is no more defeated by the Joan D'Arc Company's failure to pay through the bankruptcy court than it was by its first default.

*Failure to Present Claim to Bankrupt Court.*

VII.   The renewal notes given to the holder did not discharge Von der Lippe's obligation as co-surety.   If they are held to have paid the notes on which his name appeared, his obligation arose from that fact.   If they did not pay the original notes, his obligation as co-surety continued, and his obligation to pay arose when the original notes were discharged.   [Trego v. Estate of Cunningham, 267 Ill. 368.]

*Renewal: Discharge.*

VIII.   It is argued that the petitions do not suffi-
ciently allege an agreement constituting the parties co-
sureties as among themselves. . No demurerr was filed.
The petitions set up the facts in detail and
specifically, allege that the parties signed as
co-sureties and "agreed that they should be-
come co-sureties on said note, as aforesaid." There is
no question that the petitions are not vulnerable to the
attack now made.

<div style="margin-left:2em;font-style:italic;">Insufficient
Petition.</div>

IX.   It is contended that in three of the cases there
was neither protest nor waiver of protest alleged or
proved, and that these actions must fail for that reason.
McDonald v. Luckenbach, 170 Fed. 434; Bennet v. Kist-
ler, 163 N. Y. Supp. 555; Eaves v. Keeton, 196 Mo. App.
424; Overland Auto Co. v. Winters, 210 S. W. 1, are
cited. These decisions have something to do with
the right of a payee to enforce, without protest
or waiver, payment against those whose names appear as
indorsers but who are bound to each other, but not to
the payee, as co-sureties. In the three instant cases in
which the point is made respondent's decedent was a
party to the contract of co-suretyship, and in two cases
he was the payee in the notes, and in the other he had
become the holder before maturity. In such circum-
stances, under the facts in all these cases (all in evidence
in each case), the contract of co-suretyship rendered un-
necessary protest or waiver in the three cases in ques-
tion. Whether appellant's decedent could have enforced
that agreement as against respondent's decedent in these
three cases is another question. Here respondent's de-
cedent is the payee or holder and sues on a contract to
which all were parties and which made them co-sureties
without regard to the formal relation they bore to the
paper. Doerr's loss on these notes arose from the fail-
ure of the maker to pay him or his transferee. When
his liability arose that of Von der Lippe to contribute
arose under his co-surety agreement without regard to

<div style="margin-left:2em;font-style:italic;">Protest.</div>

any question whether a payee or holder who was a stranger to the co-surety agreement could, in the circumstances, have held him without notice of protest or waiver.

X. It is contended the judgment in one case is excessive. This insistence is based upon files of the court of bankruptcy which do not appear in the record.

**Excessive Judgment.**

XI. There was substantial evidence tending to prove the several signatures. There was no error in permitting Kadeski and Ashloff to testify. While they were parties to the contract of co-suretyship, they were not admitted to testify in their own favor or in favor of any party to the action claiming under them. Von der Lippe's obligation to Doerr was not dependent upon that of Kadeski or Ashloff or either of them. It rested upon his own promise. So viewed, the testimony is not subject to the objection made. If it be conceded that the promise to each party to the agreement is the joint promise of the others, then Kadeski and Ashloff, as joint promisors with Von der Lippe, are competent. [Vandergrif v. Swinney, 158 Mo. l. c. 532; Short v. Thomas, 178 Mo. App. l. c. 413, 414.]

**Witness: Party to Transaction.**

XII. Appellant's first counterclaim is for payments by him upon a guaranty given to Old Colony Trust & Savings Bank of Chicago to establish credit for the American Packless Valve & Mfg. Co. This guaranty was signed by L. J. Kadeski, Thos. Conran, B. A. Leafgreen, Michael Girten, Andrew Doerr, Richard J. Coyne and Detlef Von der Lippe. Credit was extended for the amount of $10,000, and the claims arising therefrom were proved against the estate of Von der Lippe in 1914, and the counterclaim was set up in the answer in 1916. The Von der Lippe estate has made no actual payment of it. The answer avers that Von der Lippe signed the guaranty upon an agreement by Doerr to protect him from all loss on account thereof,

**Counterclaim.**

and the brief makes the single contention that judgment should have gone for appellant on this counterclaim on that theory. Four of the seven signers of the guaranty are not otherwise connected with the cases, so far as the evidence shows, and there is no evidence of their insolvency, and there is no contention that a recovery on the counterclaim can be had on the theory of co-suretyship, either by reason of the legal relationship of the signers of the guaranty, as such, or under any agreement among them that they would stand in such relation to each other. The single allegation and contention is that Doerr's estate is liable upon his contract to indemnify Von der Lippe against loss by reason of his signing the guaranty. The evidence tending to prove co-suretyship, outside the instrument, is not so strong as was the evidence on respondent's case, as appears from what has already been stated. Whether it would be sufficient is not a question now. Appellant does not contend for recovery on such a relation. There is no evidence at all in the case which tends to prove the making of a specific contract by Doerr to indemnify Von der Lippe. What evidence there is tends to prove, if anything, another relation not relied upon by appellant on his appeals. The finding for respondent on this counterclaim was right.

The second contention is founded on the allegation that Doerr induced Von der Lippe to borrow $4500 from a bank for the use of the two companies mentioned "for his accommodation and upon his assurance against loss," and that the note of the companies, indorsed by Doerr and others, was given to Von der Lippe and put up by him as collateral with the note first mentioned. After Von der Lippe's death his note was proved against his estate and collected, and the collateral note was proved against the estate of Doerr by agreement between the bank and appellant, but has not been paid. No further claim of Von der Lippe's estate had been made on this transaction against Doerr's estate. Appellant in his brief bases his claim for the allowance in these cases, of this second counterclaim, upon an express contract of

Doerr to indemnify him against loss.  For the same reasons given in connection with the first counterclaim this claim, also, must be denied.

The judgment is affirmed.  All concur.