# PRODUCERS STATE BANK, Appellant, v. DAN DANCIGER and I. J. RINGOLSKY, Respondents.*

Kansas City Court of Appeals. May 5, 1924.

1. BILLS AND NOTES: Liability upon Contract Entered into in Foreign State Determined According to Laws of That State. Liability of indorsers on note executed in foreign State will be determined according to laws of State in which contract was entered into.

2. ———: Evidence: Parol Evidence Admissible to Show Indorsers Were Only Accommodation Indorsers and That There Was an Agreement They Were Not Required to Pay Any of Indebtedness Until Payee Exhausted Security. Under sections 1050, 1056, 1058, 4079 and 4113, Revised Laws, Oklahoma, 1910, parol evidence was admissible to prove that indorsers were only accommodation indorsers without consideration and therefore sureties or guarantors under such statutes, and that payee agreed before proceeding against them to exhaust security.

3. APPEAL AND ERROR: Appellate Court not Bound by the Findings of the Chancellor. Appellate court is not bound by the findings of the chancellor.

4. CORPORATIONS: Bills and Notes: Indorsers of Corporation Note Held Not Indorsers for Value Because They Were Officers and Stockholders. Indorsers of a corporation's note held not indorsers for value because they were officers and stockholders.

5. BILLS AND NOTES: Waiver: Indorsers Held Not to Have Waived Right to Demand Foreclosure of Mortgage by Obtaining Extension and Executing Renewal Note. Indorsers held not to have waived right to demand foreclosure of mortgage under payee's agreement to exhaust security before proceeding against them, by obtaining extension and renewal of the obligation and executing renewal note therefor.

---

*Headnotes 1. Bills and Notes, 8 C. J., Section 171; 2. Evidence, 22 C. J., Section 1643; 3. Appeal and Error, 4 C. J., Section 2867; 4. Corporations, 14a C. J., Section 194; 5. Bills and Notes, 8 C. J., Section 664.

Appeal from the Circuit Court of Jackson County.—*Hon. O. A. Lucas*, Judge.

AFFIRMED.

*Robinson & Mieher* and *Mossman, Rogers & Buzard* for appellant.

*F. M. Lowe, W. C. Hock, M. L. Friedman, Wm. G. Boatwright* and *Harry L. Jacobs* for respondents.

ARNOLD, J.—This suit in equity was instituted originally by plaintiffs upon a promissory note and grew out of the following facts as shown by the pleadings and evidence.

In July, 1916, the Nemo Oil Company of Oklahoma borrowed from plaintiff, a bank of Tulsa, Oklahoma, the sum of $6500, evidenced by its promissory note for that amount secured by a chattel mortgage covering the equipment on an oil lease then standing in the name of the Nemo Oil Company. As shown by defendants' testimony, this note was paid October 12, 1916. At the time this loan was made, Dan Danciger, one of the defendants, was secretary of the Nemo Company. Afterwards he became the president and defendant Ringolsky attorney and one of the directors of said company, each of said defendants owning a large interest therein. On September 18, 1916, a second loan in the sum of $5000 was made to the Nemo Company by plaintiff bank, and secured by an assignment of the oil run from the lease, which we understand to be the proceeds of the oil produced or ''run'' from the property. There was also a third loan, in the sum of $5000, made October 13, 1916, also secured by the oil run. From the time this last loan was negotiated up to November, 1917, there were in all twenty loans made by plaintiff to the Nemo Company.

The maximum amount of the indebtedness at any one time was $17,156.13, on February 6, 1917, and on July 16, 1918, the Nemo Company owed plaintiff $10,572.50, evidenced by two notes, one for $10,000, and the other for $572.50. Prior to July, 1918, the Nemo Company had

become involved in litigation. The Zelma Oil Company, also operating in Oklahoma, and others, had instituted suits affecting the title of the Nemo Company to the lease. The suits were decided against the Nemo Company, and it was thereby deprived of its title to the lease. As a result of this litigation, plaintiff asked the indorsement of Ringolsky and Danciger as a condition precedent to the renewal of the note. This indorsement was secured in July, 1918, upon the verbal understanding and agreement, as testified to by both defendants, that the bank would foreclose the security before looking to them as indorsers, and if, after the foreclosure of the security there was any unpaid balance, defendants would respond in payment thereof. Plaintiff denies such agreement.

At the time of this indorsement, the Nemo Oil Company was in possession of the property; but prior to the time the note involved in this suit was executed, the Nemo Oil Company, on October 19, 1919, had surrendered the property to the Zelma Company, pursuant to a decree of the Supreme Court of Oklahoma. About two months after the Nemo Company had delivered possession to the Zelma Company, the note involved in this suit was executed and indorsed by defendants herein, in blank on the back thereof.

The suit involving title to the lease in question which had been assigned by the Nemo Company, was instituted by W. C. Bentley, et al., stockholders of the Zelma Oil Company, against the Zelma Oil Company, the Nemo Oil Company, et al. The district court of Tulsa county, Okla., on January 29, 1917, entered a decree therein against plaintiffs in which it was held that plaintiff herein had a valid first lien upon the lease and equipment in question to secure the payment of $13,655.69, then due. Bentley, et al., appealed, and on October 13, 1919, prevailed in the Supreme Court of Okla., thereby divesting the title out of the Nemo Company and vesting it in the

Zelma Company, subject to the rights of plaintiff herein, and others.

Pursuant to the said ruling of the Supreme Court of Oklahoma, the Zelma Oil Company, in October, 1919, was put in possession of the leases and property involved. Thereafter the Zelma Oil Company filed a petition in the district court of Tulsa county, Okla., against the Nemo Oil Company, the Producers State Bank, Prairie Oil & Gas Company, Sinclair Oil & Gas Co., and others, charging conversion, and praying an accounting. On May 18, 1920, the court ruled that the Zelma Oil Company was entitled to judgment against the Nemo Company in the sum of $5215.14, and that none of the defendants was guilty of conversion; that the Zelma Company should take nothing against the Producers State Bank, and that said bank should take nothing against the Zelma Company. This case also was appealed to the Supreme Court of Oklahoma, and on October 25, 1921, the judgment of the lower court was affirmed.

The record herein discloses that sometime during the year 1918, and while the case of Bentley et al. was pending in the Supreme Court, the plaintiff herein (later called the Producers National Bank), asked defendants Danciger and Ringolsky to endorse the paper held by it, claiming the security was insufficient. The note was indorsed by defendants and it is contended by plaintiff that defendants thereby became liable to the Producers State Bank for the payment of the note at maturity. Defendants deny liability upon the ground that they were merely sureties upon the note, and were entitled to have plaintiff exhaust the security covered by the chattel mortgage above referred to and the assigned oil run; and that by verbal agreement with plaintiff at the time the note was indorsed by them, to the effect that the indorsers were not to be required to respond to the indebtedness until the said security had been exhausted, and then only in the amount of any unpaid balance.

The present suit was instituted in the circuit court of Jackson County, Missouri. The petition charges that the defendants on December 27, 1919, at Tulsa Oklahoma, executed and delivered to plaintiff their promissory note for $6500, payable on or before March 27, 1920, with interest at ten per cent per annum from maturity; that two payments were credited upon said note in the total amount of $2058.74; the prayer is for $4441.26, still due upon said note, with interest, and for attorneys' fee. The said note is set out in the petition, and while it is somewhat lengthy, it is deemed necessary to set it out in full in this opinion, because its express terms are material to the issues involved. It reads as follows:

"Dec. 27, 1919,          $6500.00

"90 days after date, I, we or either of us promise to pay to the order of The Producers State Bank of Tulsa, Oklahoma, Sixty-five Hundred & 00/100 Dollars,

7-6-20

         17.72          $6484.28

7-6-20

         2043.02          4441.26

to the Producers State Bank, Tulsa, Okla. for value received, with interest from maturity until paid at the rate of ten per cent per annum, payable annually, and if this note is not paid at maturity, is placed in the hands of an attorney for collection, I, we, or either of us, promise to pay ten per cent on the amount fixed as reasonable for attorney's fees, having deposited and pledged with said bank as collateral security for the payment of this note. The makers and endorsers hereby severally waive presentment for payment, notice of non-payment, protest and notice of protest, and agree that extensions of time for payment may be granted by the holders hereof without notice.

"Oil Runs E. & S. W. 20-17-13, which property is pledged at a valuation of $———.

"In the event of non-payment of this note at maturity, said Bank, its President or Cashier, is hereby authorized to use, endorse, collect, transfer, hypothecate,

sell or convey said collaterals, or any collaterals substituted for or added to the above, or any part thereof or cause the same to be done, at public or private sale, with or without notice or demand of any sort, at such place and on such terms as said bank may deem best, and said bank is authorized to purchase such collaterals when sold and the proceeds of such collection, sale, transfer, or hypothecation shall be applied to the payment of this note, together with all protests, damages, interest, costs and charges due upon this note or incurred by reason of its non-payment when due, or in the execution of this power. All collateral held by said Bank to secure this note may after the payment of this note be applied as herein provided to the payment of any other obligation or indebtedness due by the undersigned to said Bank, together with all costs as above stated, shall be paid to the maker of this note. If the proceeds of such collection or sale shall not be sufficient to pay this note, costs and all other indebtedness, the maker agrees on demand to make good any deficit. In case of depreciation in the market value of any security pledged for this obligation, the maker agrees to deposit on demand additional collateral so that the market value shall always be at least twenty per cent more than the amount of this note, and failing to deposit such additional security, this note shall at the option of the holder be deemed to be due and payable forthwith, anything herein expressed to the contrary notwithstanding, and the Bank may immediately reimburse itself by the sale of any and all collateral. If at any time prior to the maturity or payment of this note, the undersigned becomes or is believed by said Bank to be insolvent, said bank shall be entitled as further security for the payment of this note, to a first lien upon any drafts or bills receivable it may then hold for collection, for the account of the undersigned, and also upon any money then on deposit with said bank to the credit of the undersigned, and may retain and apply such money and the proceeds of any collection to the payment of this note.

NEMO OIL CO.
"No. 12151                    BY DAN DANCIGER, PREST.
"P. O. 336 Mayo Bldg.
· "Due Mch. 27-20.
    * "Endorsements:
            "(Signed) I. J. Ringolsky. ·
            "(Signed) Dan Danciger.
"Cancelled Revenue Stamps affixed.        $2.50"

To this petition defendant Ringolsky filed a separate answer and cross-bill, making general denial, and further answering avers that several years- prior to December 27, 1919, plaintiff loaned to the Nemo Oil Company, the sum of $6500, and as security for said loan, the said oil company assigned to plaintiff an oil and gas lease to eighty acres near Bixby, Tulsa county, Okla., upon which the Nemo Oil Company drilled eight gas and oil wells, and erected equipment and machinery worth more than $50,000, and secured said indebtedness by chattel mortgage covering said equipment and machinery; that the wells were producing and the oil runs therefrom were assigned to plaintiff as additional security for the note; that long after said note was made and the security given, plaintiff asked defendants as an accommodation to indorse a note in renewal of the former note, and represented to defendants that it held the security above mentioned. And "without any consideration given to defendant, or to the Nemo Oil Company, and wholly as an accommodation to the plaintiff, and relying on the plaintiff's representations, that it had the security mentioned and upon the express understanding and agreement that plaintiff would first exhaust the security mentioned, and that defendant would only be liable for one-half of the deficit, if any, after applying on said note all money realized from the sale of the lease, equipment and oil runs received by the plaintiff, as security for the payment of the indebtedness of said Nemo Oil Company to plaintiff, defendant endorsed said note of said Nemo Oil Company."

Said answer further avers that plaintiff has not converted the security received from the Nemo Oil Company into cash and applied same on the note, but in disregard of its obligations and duties plaintiff allowed and permitted said security to become dissipated; that plaintiff's failure to hold said security has resulted in loss and damage to defendant. The answer pleads the laws of Oklahoma and especially sections 1050, 1056, 1057 and 1058 of chapter 12, article 9, Revised Statutes of Oklahoma, 1910, and that defendant repeatedly warned and requested plaintiff to cash the security mentioned, and apply the proceeds thereof to the liquidation of said note; that plaintiff by reason of such failure to act in respect to the security mentioned, has destroyed defendant's equity in subrogation as surety and endorser; that the note attached to plaintiff's petition is not the note described in the petition, but is only a renewal of the original note and renewals thereof; that defendant is without adequate remedy at law. The prayer asks that plaintiff's petition be dismissed, and that plaintiff, its successors and assigns, as well as its officers and agents be enjoined and restrained from further prosecuting this suit in law and in equity; that an accounting be had for the value of the securities.

Defendant Danciger also filed separate answer and cross-bill, in all essentials the same as that of his codefendant Ringolsky, and in addition charges, as counterclaim, that on July 6, 1920, defendant had on deposit with plaintiff bank a checking account of $2058.74, and that without any authorization or authority from defendant, plaintiff applied said amount in part payment of the said note of the Nemo Oil Company; that demand was made upon plaintiff for this sum, but that plaintiff refused and still refuses to pay the same to defendant. Judgment is prayed on the counterclaim, with interest, and for an accounting and other relief.

On October 30, 1922, on motion of defendants, the cause was transferred to the equity docket of the court and on November 9, 1922, plaintiff dismissed its petition,

and thereafter, on the same day, filed its answer to the cross-bills and counterclaim of defendants. Said answer is, first, a general denial, and as further answer, sets out the note in controversy. The answer further alleges the execution and indorsement of the note was an Oklahoma transaction and governed by the laws of said State in force and effect at said time. Sections 4079 and 4113, Revised Statutes Oklahoma, 1910, are set out in the answer, and it is further stated that defendants indorsed said note for the purpose of securing to said Nemo Oil Company and to themselves, an extension of credit from plaintiff, and thereby defendants became jointly and severally liable to plaintiff. Credits are pleaded as stated in the petition; the credit of $2058.74 on said note being the amount of defendant Danciger's checking account in plaintiff bank, and the prayer for relief is the same as in the petition contained.

The cause was tried upon the cross-bills of defendants and the counterclaim of defendant Danciger and plaintiff's answer thereto.

During the trial, and over the objections of plaintiff, the court admitted testimony of defendants relative to an alleged verbal agreement prior to, and contemporaneous with the indorsement of the note by defendants. The chancellor found the issues against plaintiff on its cross-bill, counterclaim and reply, and for defendants on their separate cross-bills and answers, against plaintiff and for defendant Danciger on his separate counterclaim. Judgment was entered accordingly.

The decree further perpetually enjoined and restrained plaintiff, its successors and assigns, its officers and agents, "from instituting, prosecuting or threatening to institute and prosecute any suit, either in law or equity, against the defendants, jointly or severally, on the note set out and described in plaintiff's counterclaim and answer to defendants' cross-bills and counterclaim." .

Motions for new trial and in arrest being unsuccessful, plaintiff appeals.

There is no dispute as to the material facts in the case. The controversy arises as to the application of the law to the facts. It is not disputed that the contract sued on was entered into in the State of Oklahoma and that this suit therefore is to be determined according to the laws of that State. In support of its appeal plaintiff first urges that the court erred in entering its decree in favor of defendants and denying recovery to plaintiff for the reason that defendants were bound to plaintiff as indorsers on the note and in the absence of fraud, accident or mistake, could not vary the terms of the note or show liability different from that expressed by the note. In this connection plaintiff urges that the words of the note and the fact that the names of defendants are written on the back thereof make defendants absolutely liable on the note and that no oral contract, though proved and no state of facts growing out of any oral contract can affect or discharge this liability, or prevent its becoming effective.

Opposed to this position of plaintiff, defendants contend that they were, in fact, merely accommodation indorsers without consideration, and therefore are not liable as indorsers, but as sureties only, and as such are entitled to be subrogated to the security held by plaintiff, if defendants be required to pay the note.

Section 4113, Revised Laws of Oklahoma, 1910, defines an endorser as: "A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor, is deemed to be an endorser, unless he clearly indicates by appropriate words, his intention to be bound in some other capacity."

Section 4079, Revised Laws, Oklahoma, 1910, defines an accommodation party as follows:

"An accommodation party is one who signed the instrument as maker, drawer, acceptor or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding

such holder at the time of taking the instrument, knew him to be only an accommodation party."

It is admitted that defendants merely signed the note on its back without "clearly indicating by appropriate words their intention to be bound in any other capacity," rather than as indorsers as defined in section 4113, supra. There is no charge of fraud or mutual mistake in the pleadings which might place the indorsers outside the requirements of the section last quoted. It must be conceded there is an essential difference between an indorser for a consideration and a mere accommodation indorser without consideration. It is well to bear in mind that the note in issue herein is negotiable, though the proof shows the note was not negotiated but remained the property of the original payee.

In this state of fact, we think section 4113, Revised Laws, Oklahoma 1910, clearly designates defendants as indorsers and there are no words used in connection with the said indorsements to indicate the defendants intended to be bound in any other capacity. Defendants do not deny that they were indorsers, but declare they were accommodation indorsers only. Section 4079, supra, clearly defines an accommodation indorser as one who receives no value therefor and lends his name to some other person. This section further provides that such a person is liable on the instrument to a holder for value, "notwithstanding such holder at the time of taking the instrument, knew him to be only an accommodation party." In discussing this point, it is said in 3 R. C. L., par. 338, p. 1122;

"Whether an agreement among the original parties to a negotiable instrument, contrary to that imparted by the relation of the names on the paper, may be deducted from the facts and circumstances to be established by parol evidence, is a question upon which the courts are disagreed."

There is a distinction between an indorser for value and an accommodation indorser without consideration. Defendants herein claim to come within the latter class,

and if this is true parol evidence to show such relation is proper. It is clear the laws of Oklahoma recognize a distinction between an indorser for value and an accommodation indorser without consideration, and under the statute, an accommodation indorser becomes a surety, or guarantor.

Section 1050, chapter 12, article 9, Oklahoma, 1910, defines surety, as follows:

"A surety is one who, at the request of another and for the purpose of securing to him a benefit becomes responsible for the performance by the latter of some act in favor of a third person or hypothecates property as security therefor."

Section 1056 provides: "A surety is exonerated: First, in like manner with a guarantor; second, to the extent to which he is prejudiced by any act of the creditor, which would naturally prove injurious to the remedies of the surety or inconsistent with his rights, or which lessens his security; or, third, to the extent to which he is prejudiced by an omission of the creditor to do anything, when required by the surety, which it is his duty to do."

Section 1057 reads: "A surety has all the rights of a guarantor, whether he. becomes personally responsible or not."

Section 1058 provides: "A surety may require a creditor to proceed against a principal or to pursue any other remedy in his power, which the surety cannot himself pursue and which would lighten his burden; and if, in such case, the creditor neglects to do so, the surety is exonerated to the extent to which he is thereby prejudiced."

These sections are peculiarly applicable to the situation presented herein, under the pleadings, and the theory upon which the case was tried, to-wit, that the defendants, as accommodation indorsers, were sureties and as, such were entitled to be subrogated to the security plaintiff held. This rule is upheld in the following Okla-

homa decisions: Linton v. Gro. Co., 118 Pac. 385; Willoughby v. Ball, 90 Pac. 1017; Stovall v. Adair, 60 Pac. 282. In the case last named, the court held parol evidence is competent to show that one whose name appears on a promissory note as a joint maker signed such note as a surety.

Plaintiff cites the case of First National Bank v. Korn, 179 S. W. 721, an opinion by this court, in support of its contention that parol evidence is inadmissible under the facts shown herein. An examination of that case discloses this distinction: In the Korn case, defendant denied all liability under the indorsement and pleaded a collateral agreement. Proof of such agreement was held inadmissible. Not so in the case at bar, defendants admitting liability but only as accommodation indorsers, or sureties. The opinion in the Korn case was based upon the provisions of section 1003, Revised Statutes, 1909, which is the same as section 4113, Revised Laws, Oklahoma, 1910. We hold the ruling in the Korn case is not applicable here.

Defendants base their contention that parol evidence was admissible chiefly upon the ruling in the cases of Long v. Mason, 273 Mo. 266; Quackenboss v. Harbaugh, 249 S. W. 940 (Mo. Sup.); Auto Co. v. Winters et al., 180 S. W. 561, and Martinburg Bank v. Bunch, 251 S. W. 742. In the Long case the court said:

"While the uncontroverted allegations of the answer and the oral testimony offered and received in support of same may not be competent to relieve respondents from the position of accommodation makers of said note, yet such evidence was clearly admissible for the purpose of showing the relationship between Mason and the respondents in order that the latter might assert their equities under the law of subrogation, if it could be legally done in the case." Further, the court said in that case: Upon a careful consideration of our Negotiable Instruments Law (Chap. 86, R. S. 1909), we are of the opinion that it does not undertake to cut off the right of equitable

subrogation under the facts presented in the answer of defendants."

This ruling was upheld in Trust Co. v. Laughlin (Mo. Sup.), 254 S. W. 844. In view of this array of authority, we hold there was no error in admitting parol evidence to show the *status* of defendants as indorsers.

The second point upon which plaintiff seeks reversal is that the evidence fails to establish defendants' claim that the bank agreed with them that if they indorsed the note it would exhaust the security before proceeding against defendants. We have read the testimony on this point and find there was positive and convincing evidence in support of defendants' contention. While this court is not bound by the findings of the chancellor, yet he had the advantage of having the witnesses before him and was in better position to judge of their credibility and the weight to be given their testimony than are we, with only the cold type before us. Therefore we are not in position to say the chancellor's ruling was wrong on this point, even though plaintiff's officers denied such agreement. We hold against plaintiff on this point.

It is urged that defendants were indorsers for value because each was an officer and stockholder in the Nemo Oil Company. This point was not followed up in appellant's brief and as such contention is contrary to the well-defined law, we think it warrants no further consideration.

Finally, plaintiff urges that defendants waived any right they might have had to demand a foreclosure of the mortgage when they obtained an extension and renewal of the obligation and executed the note in question. We cannot accept this argument as sound in the face of the facts of record. The testimony shows that the mortgage was given as security for the old note, and the succeeding notes were in renewal of all, or part, of said original indebtedness to which the security attached. The law governing this situation is well settled. Citations are unnecessary.

Morever, if there was any question about it, an answer is found in the decree of the district court of Tulsa, Oklahoma, in the case of Bentley et al. v. The Nemo Oil Company et al., pursuant to an opinion therein by the Supreme Court, introduced in evidence and entered as a part of the decree, as follows:

"And the title to said oil and gas leases is hereby re-invested in the Zelma Oil Company, and the title of the Zelma Oil Company in and to said leases and each of them is hereby fully quieted and perfected against each and every one of the other defendants named in the caption hereto, and all persons, firms and corporations holding or which may hereafter claim to hold under or through them or any of them save and except any rights which the Producers State Bank may now have by reason of its mortgage lien on the leases in question, and the production thereon which mortgage was by the district court adjudged to be valid and save and except any rights which any person may have by reason of being subrogated to the lien thereof by payment or by assignment thereof.

"Said defendants and each of them and all persons claiming under, by, and through them and each of them are hereby perpetually barred, estopped and foreclosed from setting up or claiming any right, title, interest or demand in, to or upon said lease premises or any part thereof, save and except the rights of the mortgagee, Producers State Bank, as mortgagee as above set forth, and said defendants, except the Zelma Oil Company, and each of them and all persons claiming under, by and through them are hereby enjoined from entering upon said premises or from removing therefrom any appurtenances thereunto belonging."

Under this ruling and order there can be no question but that plaintiff held the security mentioned in the decree and order of the district court as the property of the Nemo Oil Company. It was defendants' right to have this property sold and the proceeds applied upon

the indebtedness to the plaintiff, with a right of action in plaintiff to proceed against defendants for the unpaid balance, if any. Plaintiff charges that the security was relieved at the request or suggestion of defendants, but we find no substantial support for this position in the record. For the reasons above stated, we find no grounds for disturbing the judgment of the court below. Affirmed.

All concur.